IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

VICKI M. CLARK,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )    1:04cv1330 (JCC)
                                   )
METROPOLITAN LIFE INSURANCE        )
COMPANY,                           )
                                   )
        Defendant.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on cross-motions for summary judgment.  Plaintiff Clark filed this ERISA suit against Defendant Metropolitan Life Insurance Company.  For the reasons stated below, the Court will deny both motions for summary judgment and remand for a new benefits determination.

## I. Background

Plaintiff Vicki M. Clark, as beneficiary of a decedent formerly employed by Home Depot U.S.A., Inc., ("Home Depot,") brought the present action seeking Accidental Death and Dismemberment, ("AD&D,") benefits under an employee benefits plan that Metropolitan Life Insurance Company, ("MetLife,") issued to Home Depot and administered.

From July 24, 2000 to the date of his death on November 11, 2001, Plaintiff's husband Gerald W. Clark, ("the decedent,") was an employee of Home Depot and participated in the Home Depot

Welfare Benefits Plan, ("the Plan").  The Plan is an "employee benefit plan" under the Employee Retirement Income Security Act, ("ERISA,") as defined in 29 U.S.C. § 1002.  The decedent's Plan provided Basic Life, $20,000 in AD&D, and $300,000 in voluntary AD&D benefits.  The Plan gives MetLife "full power and authority in its absolute discretion to determine all questions of eligibility for and entitlement to benefits, and to interpret and construe the terms of the plan."  (ML 118[1]).  Under the terms of the Plan, if an eligible employee is "involved in an accident and [the] injuries result in death or loss of limb within one year of the date of the accident," the employee's beneficiary receives 100 % of the employees AD&D benefit.  (ML 70).

From the Plan does "not cover losses due to, contributed to, or caused by:

- ■   physical or mental illness or diagnosis or treatment for the illness
. . .
- ■   suicide, or attempted suicide, or intentionally self-inflicted injury, while sane or insane
. . .
- ■   the use of any drug or medicine, unless used on the advice of a licensed medical practitioner . . .

(ML 72).

From March 13, 2000, to November 10, 2001, Dr. David J. Wood, M.D., F.R.C.P.C. treated the decedent for generalized anxiety disorder and panic disorder.  Dr. Wood prescribed

---

[1] Documents are referenced by the bates number assigned to each page in MetLife's administrative record as "ML ##."  The entire record is attached to MetLife's motion for summary judgment.

-2-

Venlafaxine and Fluoxetine as treatment for these disorders.  (ML 266-275).  On November 10, 2001, Dr. Swapna George, M.D., prescribed Atuss EX, a cough syrup containing Hydrocodone, to the decedent as treatment for acute bronchitis.  On November 11, 2001, the decedent was found dead at his home.  (ML 310-13, 325, 333).  The Virginia Department of Health's Office of the Chief Medical Examiner performed an autopsy and certified that the death was an accident.  (ML 312, 325).  The Medical Examiner concluded that the cause of death was medication poisoning from the Hydrocodone, Dextromethorphan, Venlafaxine, Bupropion, and Fluoxetine found in his blood, liver, and stomach.  (ML 310, 312, 325, 333).

On December 17, 2001, Clark applied for AD&D benefits. On January 10, 2002, MetLife paid the Basic Life benefits of $112,094.79.  (ML 301).  On January 14, 2002, MetLife acknowledged the claim for AD&D benefits and requested certain documents in order to review the claim.  (ML 314).  On February 7, 2002, Tom Waters sent an internal MetLife memo to Tom Presite telling Presite to call Clark to seek additional documents. (ML335).  Waters and Presite were part of MetLife's Claim Division.  In response to a phone call from Clark on February 13, 2002, MetLife told her it needed an additional document.  (ML 334).  On April 5, 2002, Clark filed a complaint against MetLife with the Virginia State Corporation Commission's Bureau of

-3-

Insurance.  (ML 230).  On April 22, 2002, MetLife requested

additional documents from Clark.  (ML 215-16).  MetLife denied

the AD&D benefits on April 29, 2003.  (ML 203-05).  Clark

appealed the denial on August 14, 2003.  (ML 234-37).  MetLife

upheld its denial of the claim on January 12, 2004.  (ML 186-88).

By letter dated June 21, 2004, Clark provided MetLife the

affidavits of Dr. Wood and Clark, ("the June 2004 affidavits").

(ML 143-48).  Dr. Wood stated in his affidavit dated June 15,

2004 that:

> the toxicology and autopsy show that [the decedent]
> suffered from an undiagnosed liver disease which would
> significantly slow the breakdown of the prescribed
> medications and it is my opinion, to a reasonable
> degree of certainly, [sic] that the combination of the
> cold medicine and other medically prescribed drugs
> built up in his liver and blood.  This is evidenced by
> the fact that the autopsy shows liver disease.
> Therefore, this death should be properly characterized
> as accidental.

(ML 147).

> Clark stated in her affidavit dated June 21, 2004:
>
> I helped [the decedent] comply with instructions in
> taking his medication and he was always very careful
> about the amount and types of medication that he took.
> He always tried to take only what he was advised to
> take . . . .  Based on all my conversations with his
> entire medical team, plus my familiarity with what was
> found at his autopsy, I am convinced his death was due
> solely to an accident.

(ML at 148).

Clark filed this suit on November 2, 2004.  The

Complaint alleges the following counts: (1) failure to provide

benefits under ERISA; and (2) failure to provide a full and fair

-4-

review as required by ERISA.   (Compl. ¶¶ 46-60).   Clark seeks the AD&D coverage of $320,000 plus interest from the 91st day following her application for the benefits, and attorneys' fees.

On March 18, 2005, Clark filed a motion for judgment pursuant to Federal Rule of Civil Procedure 52, or in the alternative, a motion for summary judgment.   On March 22, 2005, MetLife filed a motion for summary judgment.   The parties agreed during their final pre-trial conference and at oral argument that this matter can be resolved as a matter of law on summary judgment.   The Court fully agrees, as the relevant material facts are not in dispute.   These cross-motions for summary judgment are currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   *See* Fed. R. Civ. P. 56(c).   The party seeking summary judgment has the initial burden to show the absence of a material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials; a "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 248-52.  A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *See id.* at 255.   Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.   When a motion for summary judgment is made, the evidence presented must always be construed in the light most favorable to the nonmoving party. *See Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996)(en banc).

Summary judgment is especially appropriate in this case because the construction of insurance contracts is a legal question well suited for resolution by the court. *St. Paul Fire*

-6-

& Marine Ins. Co. v. Jacobson, 826 F.Supp. 155, 157 (E.D. Va.
1993), aff'd 48 F.3d 778 (4th Cir. 1995).

### III. Analysis

**A. Which standard applies?**

Because the Plan gave MetLife discretionary authority,
the Court will review the denial of benefits under an abuse of
discretion standard. Bedrick By & Through Humrickhouse v.
Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996)(citing
Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109
(1989)). When reviewing a fiduciary's decision the court will
not disturb such a decision if it is reasonable. Booth v.
Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d
335, 342 (4th Cir. 2000). If the fiduciary had some financial
interest in the outcome of the decision, then the abuse of
discretion standard is modified on a case by case basis to
"lessen the deference normally given under this standard of
review only to the extent necessary to counteract any influence
unduly resulting from the conflict." Ellis v. Metro. Life Ins.
Co., 126 F.3d 228, 233 (4th Cir. 1997).

Under the abuse of discretion standard, the plan
administrator's decision is reasonable "if it is the result of a
deliberate, principled reasoning process and if it is supported
by substantial evidence." Id. (citing Baker v. United Mine
Workers of Am. Health & Retirement Funds, 929 F.2d 1140, 1144

(6th Cir. 1991)).   When a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision.  *Id.* (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).  If the court believes the administrator lacked adequate evidence in making his decision, the proper course is to remand for a new determination.  *Id.*

Where there is a conflict of interest, the court modifies that abuse of discretion standard according to a sliding scale.  *Ellis*, 126 F.3d at 233.  The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it.  *Id.*  The Court must "review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary action free of the interests that conflict with those beneficiaries."  *Bedrick*, 93 F.3d at 153 (internal citations omitted).

Finally, the Fourth Circuit has laid out eight non-exclusive factors a court may consider in determining the reasonableness of a fiduciary's discretionary decision: (1) the language of the plan; (2) the purposes and goals of the plan; (3)

-8-

the adequacy of the materials considered to make the decision and
the degree to which they support it; (4) whether the fiduciary's
interpretation was consistent with other provisions in the plan
and with earlier interpretations of the plan; (5) whether the
decisionmaking process was reasoned and principled; (6) whether
the decision was consistent with the procedural and substantive
requirements of ERISA; (7) any external standard relevant to the
exercise of discretion; and (8) the fiduciary's motives and any
conflict of interest it may have.  *Booth*, 201 F.3d at 342-43.

**B. Was the record adequate?**

        Before the Court can determine whether the record was
adequate, a brief review of ERISA law is required.  As set forth
by the Fourth Circuit, "[w]hen interpreting the benefits
provisions of ERISA regulated insurance plans, courts are guided
by federal substantive law."  *Baker v. Provident Life & Accident
Ins. Co.*, 171 F.3d 939, 942 (4th Cir. 1999)(citing *United McGill
Corp. v. Stinnett*, 154 F.3d 168, 171 (4th Cir. 1998); *Wickman v.
Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.
1990)).  "The language of the plan itself, of course is paramount
in this endeavor."  *Id.* (citations omitted).  The plain language
of an ERISA plan must be enforced in accordance with "its literal
and natural meaning."  *Stinnett*, 154 F.3d at 172 (quoting *Health
Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)).

The instant Plan covers death resulting from an "accident," but does not define "accident." "To interpret an undefined term, courts may reference a number of sources including state law." *Baker*, 171 F.3d at 942 (citations omitted). Under *Wickman*, whether a death is an "accident" depends on whether the death was reasonably foreseeable based on the reasonable expectations of the insured, or whether a reasonable person with background and characteristics similar to the insured would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. 908 F.2d at 1088. Under the federal common law of ERISA, the burden of proving that death was a result of accidental injuries rests upon the claimant. *Danz v. Life Ins. Co. of N. Am.*, 215 F. Supp. 2d 645, 650-51 (D. Md. 2002)(citations omitted).

Clark argues that the decedent's death was the result of an accident and that coverage is not excluded under the Plan. MetLife argues that the decedent's death was not the result of an accident, and that even if it was, coverage is excluded.

The Fourth Circuit has noted that a majority of federal courts have applied the rule to deaths resulting from drunk driving accidents that, when death is the natural or probable consequence of an act or course of action, it is not the result of an "accident" as that term is defined in an accidental death or dismemberment policy. *Baker*, 171 F.3d at 942 (citations

omitted).  In *Baker*, the Fourth Circuit concluded that a death resulting from a drunk driving accident was not the result of an "accident."  The court stated, "[w]hen [the decedent] drank too much and decided to drive his car, he should have reasonably foreseen that his actions might lead to the death of another." *Baker*, 17 F.3d at 943.  The Fourth Circuit, relying on *Baker* in an unpublished case, concluded that accidental death and dismemberment benefits were correctly denied because the decedent's death that resulted from drinking and driving was not the result of an "accident".  *Poeppel v. Hartford Ins. Co.*, 87 Fed. Appx. 885, 886 (4th Cir. Feb. 17, 2004)(citing *Baker*, 171 F.3d at 942).

In *Whetsell v. Mut. Life Ins. Co. of N.Y.*, 669 F.2d 955, 957 (4th Cir. 1982), the Fourth Circuit held that death after an infected intravenous needle was used after surgery was an accident, but the death was excluded because it occurred as part of medical treatment.  The court explained that "[a]n accident is an unintended occurrence.  If such happens during medical treatment, it is still an accident, but it is not a risk assumed by the insurance company under the terms of the policy."  However, the infected needle was used as part of medical treatment, so coverage was excluded.  In reaching that result, the Fourth Circuit first considered South Carolina law, but determined that there was no South Carolina case interpreting an

exclusionary provision similar to the one presented.  The court
then considered cases from many other courts, both state and
federal, which had considered such an exclusionary provision.

In *Griffiths v. Siemens Auto., L.P.*, 1994 WL 645433
(4th Cir. Nov. 16, 1994), the Fourth Circuit in an unpublished
case relied on *Whetsell* and concluded that mistreatment in the
course of the illness for which the plaintiff went to the
hospital was an "accident."  The Fourth Circuit held that the
district court erred in relying on *Senkier v. Hartford Life &
Accident Ins. Co.*, 948 F.2d 1050 (7th Cir. 1991) and concluding
that the mistreatment was not an accident.

Clark claims that the death was the result of an
accident because a reasonable person suffering from generalized
anxiety and panic disorders and seeking long-term therapy from a
licensed medical practitioner such as Dr. Wood would expect that
any medication prescribed would result in alleviation of his
symptoms, not poisoning and death.  (Pl.'s Mot. at 16).  Clark
claims that a reasonable person suffering from acute bronchitis
and seeking urgent care from a licensed medical practitioner such
as Dr. George would expect the prescribed medication to help him
cease coughing and breath better, not cause fatal respiratory
depression.  (*Id.*)  Clark cites the dictionary definition of
"accidental" as "occurring unexpectedly and unintentionally; by
chance."  Webster's II New Riverside Dictionary 5 (2d ed. 1996).

Clark also claims that because the Medical Examiner certified that the decedent's death was an "accident," the death was an accident.

However, neither the dictionary definition nor the cause of death as certified by the Medical Examiner determine whether the death was an "accident" for purposes of the Plan. It is the test set forth in *Wickman* that determines whether a death was the result of an "accident" for purposes of the Plan. *See Wickman*, 908 F.2d at 1088; *see also Baker*, 171 F.3d at 942. The Medical Examiner's determination and the dictionary definition of an "accident" are irrelevant. *See Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486, 491 (D.R.I. 2000)(medical examiner's determination of "accident" does not mean the "accident" was of the sort contemplated by defendant or described in the Plan where the medical examiner has only four choices for cause of death: accident, suicide, homicide, and undetected); *Sangster v. Metropolitan Life Ins. Co.*, 54 F. Supp. 2d 708, 712 (E.D. Mich. 1999)("[I]t is reasonable for the . . . administrator to determine that the coroner's conclusion did not bind his/her examination of the evidence.")

MetLife argues that a reasonable person taking multiple prescribed medications would have known that ingesting amounts exceeding therapeutic doses could result in serious injury or death. (Def.'s Reply & Opp'n at 6). According to MetLife,

Venlafaxine, Hydrocodone, and Fluoxetine were each detected at a level exceeding the normal therapeutic dosage.  (ML 187).  Clark argues that these levels do not show that the decedent ingested the drugs at levels exceeding the normal therapeutic dosage.  The record shows that the decedent received a drug warning when he obtained a prescription containing Hydrocodone.  (ML 278).

MetLife relies on several cases from courts of appeals and district courts which indicate that the decedent's death in the instant case was either not the result of an "accident" or was excluded by one of the exclusions.  However, none of the policies in those cases contained the exclusion contained in the instant policy for "the use of any drug or medicine, unless used on the advice of a licensed medical practitioner."  These cases are thus inapposite.  In each case, the court concluded that the death was either not an "accident" under law contrary to that of the Fourth Circuit, (*see Whetsell*, 669 F.2d at 957), or that coverage was excluded because the death resulted from medical treatment.  *See Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052-53 (7th Cir. 1991)(death caused by a catheter that had become detached and punctured the heart was not covered under a policy that provides benefits for accidental injuries that cause the death of the insured, but excludes "medical or surgical treatment of a sickness or disease."); *Thomas v. AIG Life Ins. Co.*, 244 F.3d 368, 369 (5th Cir. 2001)(death caused by

sepsis resulting from broken sutures from stomach stapling was not an accident because it was a foreseeable complication of medical treatment for morbid obesity); *Swisher-Sherman v. Provident Life Accident & Ins. Co.*, 1994 WL 562050 (6th Cir. Oct. 13, 1994)(death after pharmacist mistakenly dispensed wrong medication precluded claim for benefits because the death was excluded as an "indirect result of medical treatment."); *Pickard v. Transamerica Occidental Life Ins. Co.*, 663 F.Supp. 126, 127 (E.D. Mich. 1987)(death after patient drank wrong solution was excluded because it was given him in preparation for a diagnostic procedure undertaken as part of his treatment); *Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182 (S.D. Ill. 1977)(death after patient was erroneously administered intravenously a drug, instead of a normal saline solution, was excluded because it was a direct consequence of medical treatment, even though the proximate cause of death was the accidental injection of a lethal drug).

The Court has found only one case where the policy included an exclusion similar to the exclusion for "the use of any drug or medicine, unless used on the advice of a licensed medical practitioner" and the issue before the court was whether the exclusion applied. *See Guin v. Fortis Benefits Ins. Co.*, 256 F. Supp. 2d 542, 546 (E.D. Tx. 2002). In that case, the policy contained an exclusion for death caused "by the use of any drug

unless as prescribed by a doctor."  Applying a modified abuse of discretion review, the court held that a denial of accidental death benefits was not unreasonable based on the exclusion where the death was caused by Diazepam, Nordiazepam, and Hydrocodone, and the decedent possessed prescriptions for Hydrocodone, but not the other two drugs.  *Id.* at 549.  Although the court did not have to determine whether the denial would have been reasonable had the death been caused by drugs for which the decedent had a prescription, it does indicate that coverage can be excluded under such an exclusion.

*Whetsell* dictates that the death in the instant case was an "accident."  Although the death occurred during medical treatment, it is not necessarily excluded because the Court must also consider the exclusion for "the use of any drug or medicine, unless used on the advice of a licensed medical practitioner."

The Court must enforce the plain language of the Plan in accordance with "its literal and natural meaning."  *Stinnett*, 154 F.3d at 172 (quoting *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)).  The Court must also consider the two exclusions in conjunction.  *See generally Pirozzi v. Blue Cross-Blue Shield of Va.*, 741 F. Supp. 586, 590 (E.D. Va. 1990)(Ellis, J.)(reading three parts of a single exclusion together because "[e]ach part helps shed light on the others and it appears that they are intended to function cooperatively.")

The policy excludes coverage for "physical or mental illness or diagnosis or treatment for the illness."  (ML 72).  It also excludes coverage for "the use of any drug or medicine, unless used on the advice of a licensed medical practitioner."  (*Id.*)

The interpretation proffered by MetLife would render the second clause of the second exclusion a nullity.  If all deaths caused by treatment for illness were excluded, this would include deaths resulting from the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness.  The Court will not create such a result that clearly conflicts with the second clause of the second exclusion.  Rather, the exclusions, read in conjunction, must not exclude death caused by the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness.  The exclusions only exclude deaths caused by treatment for illness that do not result from the use of medicine on the advice of a licensed medical practitioner.

Applying this interpretation to the instant case, coverage is not excluded because it resulted from the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness.  The Court must now determine whether the record was adequate to make the benefits decision.

Clark argues that MetLife should have considered the June 2004 affidavits of Mrs. Clark and Dr. Wood because MetLife had a continuing duty to provide the AD&D benefits to Clark. (Pl.'s Reply at 9-10).  In his affidavit, Dr. Wood states his opinion that the decedent died of undiagnosed liver disease which slowed the breakdown of the prescribed medications and that the death was accidental.  (ML 147).  This would explain the high levels of the drugs found in the decedent's system.  MetLife argues that it did not abuse its discretion by not considering them because they were received six months after MetLife's final determination of [Clark's] administrative appeal.  (Def.'s Mot. at 13).

The regulations implementing ERISA provide:

(1) In general.  Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.
. . .
(3) Group health plans.  The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures--
(i) Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination.

29 C.F.R. § 2560.503-1(h)(1), (3)(2005).

MetLife fully complied with these regulations and Clark points to no regulation or case which requires an employee

-18-

benefit plan to consider evidence provided six months after the
final appeal determination has been made.

The Fourth Circuit has explained that a district court
may consider whether the Administrator erred in not securing
sufficient evidence on which to base a decisions. *Berry v. Ciba-
Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985).  If the court
believes the Administrator lacked adequate evidence, the proper
course is to remand for a new determination. *Id.* (citations
omitted).[2]  Finally, remand for further action is unnecessary
where the evidence clearly shows that the Administrator abused
its discretion.  *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990
F.2d 154, 159 (4th Cir. 1993)(claim denial was an abuse of
discretion because the Administrator did not know the standards
by which the decision to deny was made and produced no evidence
that it even remotely considered any specific reason in denying
the claim).  *Weaver* is clearly inapposite to this case; even if
MetLife should have considered June 2004 affidavits, its actions
were not as remiss as those of the *Weaver* Administrator.

Clark's reliance on *Evans v. Metropolitan Life Ins.
Co.*, 358 F.3d 307 (4th Cir. 2004) for the proposition that

---

[2] MetLife's reliance on the Fourth Circuit's unpublished opinion in
*Webster v. Black & Decker, Inc.*, 33 Fed. Appx. 69 (4th Cir. Apr. 10, 2002) for
the proposition that the Court should not consider the affidavits is somewhat
misplaced.  In *Webster*, the Court explained that it could not consider
evidence which was not in the administrative record.  *Id.* at *4.  However,
*Webster* is consistent with *Berry*, which requires a district court to remand
for a new determination if the court believes the Administrator lacked
adequate evidence.

MetLife abused its discretion by failing to consider the June 2004 affidavits is misplaced.  In that case, the defendant administrator admitted that there was some evidence that the plaintiff was disabled as of August 2000, but it refused to consider that evidence, focusing rather on whether the plaintiff was disabled as of December 2, 1999.  The Fourth Circuit held that MetLife was not allowed under the plan to limit its disability determination to December 2, 1999.  *Id.* n.6.  *Evans* is inapposite.

Moreover, MetLife should not be expected to consider evidence submitted six months after it denied the appeal.  In the interests of finality, there is some point at which MetLife must be able to close its review of the claim.  In the instant case, Clark applied for AD&D benefits on December 17, 2001.  MetLife denied the AD&D benefits on April 29, 2003.  Clark appealed the denial on August 14, 2003.  MetLife upheld its denial of the claim on January 12, 2004.  Clark did not provide the June 2004 affidavits to MetLife until June 21, 2004.  Over eight months passed between MetLife's initial denial and the time that it upheld the denial.  ERISA regulations require a group health plan to provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination.  29 C.F.R. § 2560.503-1(h)(3)(i).  The regulations do not require the plan to review an appeal for a

-20-

particular amount of time.  It was reasonable in this case for MetLife to uphold its denial nearly five months after Clark appealed it and then close its case.  It was also reasonable for MetLife to refuse to reconsider the claim when, six months later, Clark provided the June 2004 affidavits.

Finally, the Fourth Circuit has expressed concern that the administration of benefit and pension plans should be the function of the designated fiduciaries, not the federal courts. *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788-89 (4th Cir. 1995)(citing *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 & n.4 (4th Cir. 1985)).  The Fourth Circuit also emphasized the importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings under ERISA. *Id.*  Allowing plans to close their files within the time that MetLife closed the Clark file furthers the policy set forth by the Fourth Circuit.  The Court will not interfere with MetLife's internal procedures for resolving claims in this case because it was entirely reasonable for MetLife not to consider the June 2004 affidavits.

However, the Court finds that the record was inadequate for a different reason.  In considering the claim, Waters referred Clark's claim to Dr. Rafael Weeks of MetLife's Medical Department.  (ML 265).  Dr. Weeks reviewed the claim and reported that the individual presence or combination of the amount of

Hydrocodone and Fluoxetine "may cause death."  (ML 254).  Dr.
Weeks determined that Venlafaxine, Hydrocodone, and Fluoxetine
were above normal levels and would indicate a more than normal
administration of those drugs, but he could not tell if the
decedent complied with his doctor's instructions for taking the
medications.  (ML 265).  Finally, in the January 12, 2004 letter
upholding denial of the claim, MetLife informed Clark that:

> the decedent took medications that, as documents in
> MetLife's file show, and you have agreed, were
> prescribed for him by his physicians for treatment for
> his physical and mental illness . . . . [The exclusion
> for the "use of any drug or medicine, unless used on
> the advice of a licensed medical practitioner"] is also
> applicable to this matter.  Here, the decedent took
> medications that were prescribed for him, however, two
> of those medications were detected at levels five to
> ten times the normal therapeutic levels and one
> medication prescribed for the decedent was detected at
> a toxic level.  The levels of the medications detected
> do not support a claim that he used the medications as
> advised by his physicians.

(ML 186-88).

There is no evidence in the record that MetLife
attempted to determine why the decedent had high levels of the
drugs in his system.  MetLife instead relied on the numerous
cases which affirmed the denial of benefits where death resulted
from an accident or medical treatment.  Although the burden is on
the claimant to show that the death resulted from an accident,
*see Danz v. Life Ins. Co. of N. Am.*, 215 F. Supp. 2d 645, 650-51
(D. Md. 2002), MetLife is required to conduct a full and fair
review of the claim on appeal.  *See* 29 C.F.R. § 2560.503-

1(h)(3)(i).  A full and fair review of the claim and the adverse
benefit determination should have considered whether the high
levels of drugs in the decedent's system could have resulted from
any cause other than the decedent not following the advice of his
doctors.  Dr. Weeks acknowledged that he could not determine
whether the decedent had followed the advice of his doctors.
Based on this gap in the record, the Court cannot say that the
denial was supported by "substantial" enough evidence to counter
the conflict of interest under which MetLife operated.  *Ellis*,
126 F.3d at 233.  Thus, the Court will remand for a new benefits
determination.  *Id.*

## IV. Conclusion

For the reasons stated above, the Court will deny both
motions for summary judgment and remand for a new benefits
determination.  An appropriate Order will issue.


May 11 , 2005                    /s/
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE

-23-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

---

| | |
|---|---|
| VICKI M. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   1:04cv1330 (JCC) |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Plaintiff's motion for summary judgment is DENIED;

(2) Defendant's motion for summary judgment is DENIED;

(3) the case is REMANDED for a new benefits determination; and

(4) the Clerk of the Court shall forward copies of this Order and the accompanying Memorandum Opinion to all counsel of record.

This Order is Final.

May 11 , 2005                            /s/
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE